**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JEFFREY WHITTERS, | : | |
| | : | Civil Action No. 05-1972 (RBK) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| JOHN NASH, WARDEN OF FCI | : | |
| FORT DIX, | : | |
| | : | |
| Respondent. | : | |

**APPEARANCES:**

    JEFFREY WHITTERS, Petitioner pro se
    #58310-066
    F.C.I. Fort Dix
    P.O. Box 7000 (West)
    Fort Dix, NJ  08640

**KUGLER**, District Judge

This matter comes before the Court by way of petitioner Jeffrey Whitters' application for a writ of habeas corpus relief pursuant to 28 U.S.C. § 2241.[1]  Petitioner Jeffrey Whitters ("Whitters"), is a federal prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey ("FCI

---

[1] Section 2241 provides in relevant part:
(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

Fort Dix"). The sole respondent is FCI Fort Dix Warden John Nash.

For the reasons stated herein, Whitters' claim regarding the calculation of good conduct time will be denied.[2] See 28 U.S.C. § 2243 ("A court ... entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.").

## I.   BACKGROUND

This statement of background facts is taken from the Petition and is accepted as true for purposes of this review.

Whitters is currently serving a sentence of imprisonment imposed by the United States District Court for the Eastern District of Pennsylvania on October 5, 2004 after Whitters' conviction for possession of a firearm by a convicted felon. Based upon its policy interpreting 18 U.S.C. § 3624(b), relating to good time credits, the Bureau of Prisons ("BOP") has advised Whitters that he may potentially earn 47 days of good time credit. Whitters contends that the BOP policy misinterprets 18

---

[2] Whitters also challenges the constitutionality of Bureau of Prisons' decision to grant petitioner only 30 days community correction center ("CCC") confinement before the end of his prison term, rather than the six months CCC placement typically allowed before a policy change in December 2002. The Court will allow this claim to proceed, and will direct respondents to answer the petition as to the CCC placement claim.

2

U.S.C. § 3624(b), and that he should be entitled to earn a potential 54 days of good time credit.  That is, Whitters contends that good time credits should be awarded based on the total term of imprisonment <u>imposed</u>, rather than on an annual incremental basis for time <u>served</u>.  Whitters does not dispute the accuracy of the BOP's calculations under its stated policy.

## II.  ANALYSIS

Section 3624(b) of the United States Code, Title 18, governs good conduct time for federal prisoners.  This section[3] reads:

---

[3]  For offenses committed before April 26, 1996, former 18 U.S.C. § 3624(b) provided:

> A prisoner who is serving a term of imprisonment of more than one year, other than a term of imprisonment for the duration of his life, shall receive credit toward the service of his sentence, beyond the time served, of fifty-four days at the end of each year of his term of imprisonment, beginning at the end of the first year of the term, unless the Bureau of Prisons determines that, during that year, he has not satisfactorily complied with such institutional disciplinary regulations as have been approved by the Attorney General and issued to the prisoner. If the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, he shall receive no such credit toward service of his sentence or shall receive such lesser credit as the Bureau determines to be appropriate. The Bureau's determination shall be made within fifteen days after the end of each year of the sentence. Such credit toward service of sentence vests at the time that it is received. Credit that has vested may not later be withdrawn, and credit that has not been earned may not later be granted. Credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

> "Subject to paragraph (2), a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.  ...  Credit that has not been earned may not later be granted.  Subject to paragraph (2), credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence."

18 U.S.C. § 3624(b)(1).  Subparagraph (b)(2) provides that credits awarded after the date of enactment (April 26, 1996) of the Prison Litigation Reform Act (Title VII of Pub. L. 104-134) "shall vest on the date the prisoner is released from custody." 18 U.S.C. § 3624(b)(2).

The Bureau of Prisons has codified its interpretation of former and current § 3624(b) at 28 C.F.R. § 523.20.

> Pursuant to 18 U.S.C. 3624(b), as in effect for offenses committed on or after November 1, 1987 but before April 26, 1996, an inmate earns 54 days credit toward service of sentence (good conduct time credit) <u>for each year served</u>.  This amount is prorated when the time served by the inmate for the sentence during the year is less than a full year.  The amount to be awarded is also subject to disciplinary disallowance ... .  Pursuant to 18 U.S.C. 3624(b), as in effect for offenses committed on or after April 26, 1996, the Bureau shall consider whether the inmate has earned, or is making satisfactory progress (see § 544.73(b) of this chapter) toward earning a General Educational Development (GED) credential before awarding good conduct time credit.
>
> (a) When considering good conduct time for an inmate serving a sentence for an offense committed on or after April 26, 1996, the Bureau shall award:

4

>     (1) 54 days credit <u>for each year served</u> (prorated when
>     the time served by the inmate for the sentence during
>     the year is less than a full year) if the inmate has
>     earned or is making satisfactory progress toward
>     earning a GED credential or high school diploma; or ...

This interpretation is implemented through BOP Program Statement ("P.S.") 5880.28 (emphasis added).  <u>See also</u> P.S. 5884.01, <u>Good Conduct Time Under the Prison Litigation Reform Act</u>.  The Bureau of Prisons has determined that "54 days of GCT [("good conduct time")] may be earned for each full year <u>served</u> on a sentence in excess of one year," P.S. 5880.28(g) (emphasis added), and has derived a formula to calculate the amount of GCT that may be earned for any fractional year served on a sentence in excess of one year.

>     For release purposes, subsection 3624(b) is the most
>     important provision in the computation process since
>     the proper application of that subsection determines
>     the actual statutory date of release for the prisoner.
>     The release date is determined, of course, by
>     subtracting the total amount of GCT awarded during the
>     term of the sentence from the full time date of the
>     sentence.  The <u>total</u> amount of GCT awarded during the
>     term of a sentence is found by adding the amount of GCT
>     awarded at the end of each year to the amount of GCT
>     awarded for the last portion of a year.
>
>     As noted in (1) above, 54 days of GCT may be awarded
>     for each full year <u>served</u> on a sentence in excess of
>     one year.  Since 54 days of GCT per year cannot be
>     divided evenly into one year, or 12 months, or 52
>     weeks, or 365 days, determining the amount of GCT that
>     may be awarded for the last portion of a year on the
>     sentence becomes arithmetically complicated.  The BOP
>     has developed a formula (hereinafter called the "GCT
>     formula") that best conforms to the statute when
>     calculating the maximum number of days that may be
>     awarded for the time served during the last portion of
>     a year on the sentence.

> The GCT formula is based on dividing 54 days (the maximum number of days that can be awarded for one year in service of a sentence) into one day which results in the portion of one day of GCT that may be awarded for one day served on a sentence. 365 days divided into 54 days equals .<u>148</u>. Since .148 is less than one full day, no GCT can be awarded for one day served on the sentence. Two days of service on a sentence equals .296 (2 x .148) or zero days GCT; ... seven days equals 1.036 (7 x .148) or <u>1</u> day GCT. The fraction is always dropped.
>
> ...
>
> <u>It is essential to learn that GCT is not awarded on the basis of the length of the sentence imposed, but rather on the number of days actually served.</u> In other words, when the GCT awarded plus the number of days actually served equals the days remaining on the sentence, then the prisoner shall be released on the date arrived at in the computation process. (days remaining on sentence - (GCT + days served) = release date). ...

P.S. 5880.28(g), <u>Sentence Computation Manual CCCA</u>, at 1-40 through 1-45 (emphasis added).

A.   <u>Exhaustion of Administrative Remedies</u>

Whitters does not allege that he has exhausted his administrative remedies.[4]  Although 28 U.S.C. § 2241 contains no

---

[4]  The BOP Administrative Remedy Program is a three-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff.  28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response.

statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies. See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and

---

28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.  Id.  Appeal to the General Counsel is the final administrative appeal.  Id.

7

unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

Similarly, exhaustion of administrative remedies is not required where the issue presented involves only statutory construction, because there is no need for an administrative agency to develop a factual record or to apply its expertise with respect to the circumstances presented.  See Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981) (citing U.S. ex re. Marrero v. Warden, Lewisburg Penitentiary, 483 F.2d 656, 659 (3d Cir. 1973), rev'd on other grounds, 417 U.S. 653 (1974)).

Here, Whitters does not challenge the accuracy of the application of the agency's regulations to him, but challenges only whether the regulation and Program Statement correctly implement the statute pursuant to which they were promulgated.  This is a question of statutory construction that would not be aided by requiring Whitters to exhaust his administrative remedies, and this Court will proceed to determine petitioner's claim on the merits.

B.   The Good Conduct Time Credits

Liberally construing the petition, Whitters argues that the BOP's interpretation of § 3624 is unreasonable.  However, the

Court finds that the interpretation is reasonable and entitled to deference under the rule of Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984).

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the courts, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Chevron, 467 U.S. at 842-43 (footnotes omitted).

Two Circuit Courts of Appeals have addressed the statutory-construction issue presented here. In Williams v. LaManna, 20 Fed. Appx. 360, 361, 2001 WL 1136069 (6th Cir. Sept. 19, 2001) (unpubl.), the Court of Appeals for the Sixth Circuit held that "[t]he statute clearly states that good conduct time is awarded on time served by the inmate, not on the time that might potentially be served by the inmate."

The Court of Appeals for the Ninth Circuit did not find the language so clear. "In this case, the words of the statute do not provide clear guidance as to what the phrase 'term of imprisonment' means." Pacheco-Camacho v. Hood, 272 F.3d 1266, 1268 (9th Cir. 2001) (involving a claim by a prisoner sentenced

to a term of imprisonment of one year and one day), cert. denied, 535 U.S. 1105 (2002). The Court further held that the legislative history did nothing to remove that ambiguity. See id. at 1269. Proceeding to the second step of the Chevron analysis, the Court found that the language granting the BOP authority to award or withhold good time credits and providing for proration of the credit for the last year or portion of a year implicitly charged the Bureau of Prisons with implementation of the proration scheme. See id. at 1270. The Court held that the agency's interpretation of the statute and proration formula were reasonable, and entitled to deference, in that they prevent prisoners from receiving a windfall, in the form of full credit for time they do not serve, and they enable prisoners to estimate with certainty the time of their release. See id. at 1268-71; See also Perez-Olivio v. Chavez, 394 F.3d 45 (1st Cir. 2005); White v. Scibana, 390 F.3d 997 (7th Cir. 2004).

   Recently the Court of Appeals for the Third Circuit, relying on Pacheco-Camacho, held that even if the language "term of imprisonment" is ambiguous, the BOP reasonably interpreted the statute's language. See Brown v. DeRosa, Case No. 04-3731 (3d Cir. Feb. 3, 2005)(unpubl.). This Court agrees with and adheres to that ruling.

10

## **CONCLUSION**

Based upon the foregoing, Whitters' claim that the Bureau of Prison's miscalculated his good time credit will be dismissed. Whitters' other claim seeking home confinement or placement in a community corrections center for the six months preceding his projected release date will be allowed to proceed and the respondent will be directed to answer this ground in an expedited time frame.  An appropriate Order accompanies this Opinion.


S/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

Dated: July 15, 2005